**UNITED STATES DISTRICT COURT**
**DISTRICT OF SOUTH CAROLINA**
**COLUMBIA DIVISION**

| | | |
|---|---|---|
| Kathryn Bevan, | ) | **COMPLAINT** |
| | ) | |
| Plaintiff, | ) | Civil Action No. _3:23-586_-CMC |
| | ) | |
| v. | ) | |
| | ) | **JURY TRIAL** |
| Capital One Bank USA, N.A., | ) | **DEMANDED** |
| and Midland Credit Management, | ) | |
| | ) | |
| Defendants. | ) | |

## COMPLAINT

1.    This is an action brought by Plaintiff, Kathryn Bevan, for actual damages and attorneys' fees and costs for Defendant Capital One's violations of the Truth In Lending Act, 15 U.S.C. §1643, *et seq.*, actual, statutory, and punitive damages, plus attorneys' fees and costs for Defendant Capital One's violations of the Fair Credit Reporting Act, 15 U.S.C. §1681, *et seq.*, and actual damages, trebled due to willfulness, and attorneys' fees for Defendant Capital One's violations of the South Carolina Unfair Trade Practices Act, S.C. Code Ann. §39-5-10, *et seq.* Plaintiff also brings this action for actual, statutory, and punitive damages and attorneys' fees and costs for Defendant Midland Credit Management's (hereinafter "MCM") violations of the Fair Credit Reporting Act ("FCRA") 15 U.S.C. §1681s-2(b); and for actual and statutory damages, plus attorneys' fees and costs for Defendant MCM's violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq*, (hereinafter "FDCPA"). Finally, Plaintiff seeks actual, statutory, and punitive

1

damages, plus attorneys' fees and costs against both Defendants for their violations of the South Carolina Consumer Protection Code, §37-5-108, *et seq*., and actual damages and punitive damages for Defendants' violations of South Carolina common law as set forth herein.

2. The FCRA exists to protect consumers' privacy and to impose upon those who trade in consumers' private information strict requirements to ensure that the information they report is as accurate as possible.

3. Before the enactment of the FCRA, inaccurate and misleading information was identified as "the most serious problem in the credit reporting industry." 115 Cong. Rec. 2411 (Jan. 31, 1969). With this problem in mind, Congress enacted the FCRA "to prevent consumers from being unjustly damaged because of inaccurate or arbitrary information in a credit report." S. Rep. No. 91-517 (1969).

4. To accomplish Congress' goals, the FCRA contains a variety of requirements to protect consumers, including §§ 1681c and 1681e, which are two of the cornerstone provisions of the FCRA.

5. One of the primary purposes of the FCRA is to assure "maximum possible accuracy" of consumer information is to ensure the stability of our banking system:

> The banking system is dependent upon fair and accurate credit reporting. Inaccurate credit reports directly impair the efficiency of the banking system, and unfair credit reporting methods undermine the public confidence which is essential to the continued functioning of the banking system.

*See* 15 U.S.C. § 1681(a)(1).

6.    The preservation of one's good name and reputation is also at the heart of the

FCRA's purposes:

> [W]ith the trend toward computerization of billings and the
> establishment of all sorts of computerized data banks, the
> individual is in great danger of having his life and character
> reduced to impersonal "blips" and key-punch holes in a stolid and
> unthinking machine which can literally ruin his reputation without
> cause, and make him unemployable or uninsurable, as well as *deny
> him the opportunity to obtain a mortgage or buy a home. We are
> not nearly as much concerned over the possible mistaken turn-
> down of a consumer for a luxury item as we are over the possible
> destruction of his good name without his knowledge and without
> reason. * * * [A]s Shakespeare said, the loss of one's good name
> is beyond price and makes one poor indeed* (emphasis added).

*Bryant v. TRW, Inc.*, 689 F.2d 72, 79 (6th Cir. 1982) [quoting 116 Cong. Rec. 36570

(1970)].

## JURISDICTION AND VENUE

7.    This Court has Jurisdiction under 15 U.S.C. §1640(e), 15 U.S.C. §1681, 15 U.S.C.

§1692, and 28 U.S.C. §1331, §1332, and §1367.

8.    Venue is proper in the Columbia Division because the Plaintiff resides in Sumter

County and the Defendants transacted business in this division.

## PARTIES

9.    The Plaintiff, Kathryn Bevan, is a resident and citizen of the State of South Carolina,

Sumter County, and is over the age of twenty-one (21) years.

10.    Defendant Capital One Bank USA, N.A. ("Capital One") whose correct corporate

status is unknown to the Plaintiff at this time, was in all respects and at all times

relevant herein, doing business in the State of South Carolina.  Defendant Capital

3

One may be served with process through its registered agent for service of process, Corporation Service Company, 11 South 12th Street, Richmond, Virginia 23219.

11. Defendant Midland Credit Management ("MCM") is a Kansas corporation with its principal place of business in San Diego, California. MCM regularly conducts business in South Carolina. MCM is a "furnisher" of credit information to the national consumer reporting agencies. Defendant MCM may be served with process through its registered agent for service of process, Corporation Service Company, 508 Meeting Street, West Columbia, South Carolina 29169.

## FACTUAL ALLEGATIONS

12. In 2004, John Morgan Bevan, Jr., Plaintiff's now deceased husband, opened a Capital One credit card Account ending 7526 (hereinafter referred to as the "Account"). The Plaintiff never applied for a Capital One credit card, nor did she agree to be added as a joint Account holder on the Account. The Plaintiff never gave Mr. Bevan permission to add her name to the Account and was not aware that Defendant ever considered her to be a responsible party on the Account. Plaintiff was not a joint account holder on this Account and never agreed for her name to be added to this Account as a joint account holder.

13. Plaintiff was not aware her name had been added to this Account without her permission, never had possession of the credit card ending #2583, and never made any charges on this Account on the #7526 or #2583 cards.

14. In early 2021, Mr. Bevan's health declined significantly. On or about February 11,

4

2021, Plaintiff called Defendant Capital One to make a payment for her husband on the Account.

15. On or about March 1, 2021, Plaintiff called Defendant Capital One to let them know her husband was dying. During this call, Plaintiff specifically asked Defendant Capital One what would happen to her husband's Account when he died. Defendant Capital One's employee responded that Plaintiff would be totally responsible for the Account. When Plaintiff explained that she was not on the Account and had never agreed to be responsible for the Account, the employee told her it didn't matter since she was the spouse. Plaintiff, overcome with fear and worry, again reiterated that it was not her Account, but Defendant Capital One's employee continued to insist that Plaintiff would be liable, and that Defendant would come after her to collect its money. Plaintiff, an elderly woman with Parkinson's disease, was absolutely terrified by Defendant Capital One's employee's threats that it would come after her if she didn't pay the debt. Due to the threats and completely against her will, Plaintiff made a payment over the phone in the amount of $10,000.00 to Defendant Capital One on the Account.

16. On March 17, 2021, Mr. Bevan passed away. At the time of his death, the balance remaining on the Capital One Account was in excess of $10,000.

17. Defendant Capital One was notified by phone and by mail of Mr. Bevan's death.

18. Following Mr. Bevan's death, Defendant Capital One began sending Account statements to Plaintiff in her name only stating that a payment was due. Defendant

5

Capital One also began calling Plaintiff demanding payment on the Account.

19. On or about May 1, 2021, Plaintiff and her husband's estate lawyer, Glenn Givens, called Defendant Capital One to discuss the Account. During this telephone call, Plaintiff and Mr. Givens repeatedly informed Defendant Capital One that Plaintiff was not a joint account holder on the Account and that she never agreed to be personally liable for any charges.

20. Defendant Capital One was specifically notified that an estate had been opened for Mr. Bevan's creditors. Defendant Capital One received notice of the estate but intentionally chose not to file a claim with the estate so that it could continue its efforts to collect more money from Mr. Bevan's grieving widow, the Plaintiff.

21. After waiting for several months for Defendant Capital One to file a claim with the estate, on or about October 21, 2021, Mr. Givens recommended Plaintiff check her credit score to make sure that the Capital One Account was not negatively impacting her credit.

22. When Plaintiff checked her score, she learned that the Account had been added to her credit reports and that, as a result, her credit score had dropped significantly.

23. On or about November 15, 2021, with full knowledge that Plaintiff disputed all liability on the Account, Defendant Capital One sold the Account to Defendant MCM. Thereafter, Defendant Capital One sent Plaintiff a letter stating it had sold the Account to Defendant MCM and that Defendant MCM could now contact her either directly or through an affiliate or third party.

6

24.    As soon as Defendant MCM purchased the Account, it immediately began to call Plaintiff demanding payment.   During these calls, Plaintiff always informed Defendant MCM that the Account belonged to her deceased husband and that she disputed owing any money on the Account.   Despite Plaintiff's disputes and informing Defendant MCM that it was not her Account, Defendant MCM continued to repeatedly cause Plaintiff's telephone to ring.

25.    On or about January 31, 2022, Plaintiff received a letter from Defendant MCM regarding Plaintiff's dispute of the Account.   In this letter, Defendant MCM stated that the original Account number ended in 2583, that it was opened on June 14, 2004, and that the current balance due was $11,038.98.

26.    On or about January 31, 2022, Plaintiff received a copy of her Equifax credit report. The Capital One Account the subject of this action was not reporting on Plaintiff's credit report.   However, Plaintiff's report did show that Defendant Capital One accessed Plaintiff's credit report on November 12, 2021, and January 19, 2022, the last of which occurred after Defendant Capital One sold the Account to Defendant MCM.   Accordingly, Defendant Capital One had no permissible purpose for accessing Plaintiff's credit file on January 19, 2022.

27.    On or about January 31, 2022, Plaintiff also received a copy of her Experian credit report.   On that date, Plaintiff's Experian credit report showed an 806 FICO score. There were no derogatory Accounts on her Experian credit file and Defendant Capital One was not reporting the subject Account on her credit.   However,

Plaintiff's Experian report did show that Defendant Capital One accessed Plaintiff's credit report on December 9, 2021, after Defendant Capital One sold the Account to Defendant MCM. Accordingly, Defendant Capital One had no permissible purpose for accessing Plaintiff's credit file on these dates.

28. On or about February 23, 2022, Plaintiff received a settlement offer from Defendant MCM giving her three options to pay off the disputed Account.

29. On or about March 7, 2022, Plaintiff received a threatening telephone call from 800-379-5570 wherein the caller stated they were Midland Credit Management. Plaintiff was so scared by the tone of the caller that she denied it was her and hung up the phone.

30. On or about March 11, 2022, Plaintiff sent a letter to Defendant Capital One regarding the Account. Specifically, Plaintiff informed Defendant Capital One that the Account belonged to her deceased husband, that she never gave him, or anyone else, permission to add her to the Account, that she never agreed to be legally responsible for the Account, and that she knew nothing about her name being allegedly added to the Account until the time surrounding her husband's death. Plaintiff disputed all liability on the Account and requested that Defendant Capital One send her a copy of the application with her alleged signature. Plaintiff also requested a copy of every statement issued on the Account.

31. On or about March 11, 2022, Plaintiff also sent a letter to Defendant MCM wherein she disputed all liability on the Account, stated that the Account belonged solely to

her deceased husband, and specifically informed Defendant MCM that she never gave her permission to be added to the Account.  Finally, Plaintiff requested that Defendant MCM send her a copy of the Capital One application with her alleged signature, as well as a copy of every document provided to Defendant MCM from Defendant Capital One on the Account.

32.    On March 11, 2022, Plaintiff also sent a dispute letter to TransUnion.  In this letter Plaintiff informed TransUnion that she had requested a copy of her TransUnion credit report through an Annual Credit Report Request form which Plaintiff mailed on January 26, 2022, but she never received same.  Plaintiff also specifically disputed two Accounts which she believed may have been reporting on her TransUnion credit report at the time.  First, Plaintiff disputed the Capital One Account as said Account belonged to her deceased husband and, if her name was on the Account, it was fraudulently added to the Account by Capital One or her husband without her permission or consent.  Second, Plaintiff disputed the MCM Account as it was related to the disputed Capital One Account, and she did not owe any balance claimed on that disputed Account.

33.    On March 11, 2022, Plaintiff received a telephone call from an employee of Defendant MCM who stated his name was "Albert Davis."  During this call, Plaintiff informed Defendant MCM that the Account belonged to her deceased husband and that she knew nothing about being allegedly added to the Account until the time surrounding her husband's death.

34.     On or about March 24, 2022, Plaintiff received a letter from TransUnion informing her that, after reviewing her dispute request, TransUnion determined that the disputed information was not currently appearing on her TransUnion credit file.

35.     On or about April 1, 2022, Plaintiff received a letter from Defendant Capital One thanking her for contacting it about her credit bureau report. Defendant Capital One informed Plaintiff that in order for it to research her request, Plaintiff would need to send in any supporting documentation, such as a credit report, showing that Capital One sent incorrect information to the credit reporting agencies, a copy of the letter from Defendant Capital One which showed the last four digits of the Account number, a copy of her original correspondence sent to Defendant Capital One by Plaintiff regarding her credit report, and her entire Social Security number. Defendant Capital One stated that the information must be forwarded to them by April 22, 2022, in order from them to research her request.

36.     On or about April 7, 2022, Plaintiff sent a letter to Defendant Capital One via certified mail regarding the Account and Capital One Case Number 22032319372347. In this letter, Plaintiff specifically disputed all liability on the Account and requested that Defendant Capital One send her "a copy of the application with my actual signature and every other document you claim makes me responsible on this Account."

37.     On or about April 19, 2022, Plaintiff received a letter from Defendant Capital One on the Account. In this letter, Defendant Capital One specifically informed Plaintiff

10

that it had sent a request to the credit bureaus "to delete the Capital One [A]ccount from [her] credit files."  This letter also informed Plaintiff that the Account had been sold on November 15, 2021, to Defendant MCM.

38.    On July 22, 2022, Plaintiff obtained all three of her credit scores through Equifax. At that time, her Equifax credit score was 733, her Experian credit score was 748, and her TransUnion credit score was 746.  All three of Plaintiff's credit reports were reporting the MCM collection account.

39.    On or about August 2, 2022, Plaintiff sent a letter to Equifax specifically disputing the MCM collection account that had been added to her credit report.  Plaintiff informed Equifax that the MCM collection account came from a Capital One Account which belonged to her deceased husband and that she never agreed to be liable for the Account.  Plaintiff also informed Equifax that she had requested proof from Capital One and MCM that she had agreed to be liable on the Account and received nothing.  Equifax received Plaintiff's letter on August 10, 2022 and forwarded a copy of same to Defendant MCM.

40.    On or about August 2, 2022, Plaintiff sent a letter to Experian specifically disputing the MCM collection account that had been added to her credit report.  Plaintiff informed Experian that the MCM collection account came from a Capital One Account which belonged to her deceased husband and that she never agreed to be liable for the Account.  Plaintiff also informed Experian that she had requested proof from Capital One and MCM that she had agreed to be liable on the Account and

received nothing.   Experian received Plaintiff's letter on August 9, 2022 and forwarded a copy of same to Defendant MCM.

41.    On or about August 2, 2022, Plaintiff sent a letter to TransUnion informing them that in July 2022, she learned that the MCM collection account had been added to her TransUnion credit report.  As a result, her credit score with TransUnion dropped to 746.  Plaintiff also informed TransUnion that she specifically disputed the MCM collection account as it was previously a Capital One Account which belonged to her deceased husband and that she never agreed to be liable for the Account. Plaintiff informed TransUnion that she had previously requested proof from Capital One and MCM that she had agreed to be liable on the Account and had received nothing.  TransUnion received Plaintiff's letter on August 9, 2022 and forwarded a copy of same to Defendant MCM.

42.    On or about August 13, 2022, Plaintiff received a letter from Equifax stating that Defendant MCM had verified the reporting of the collection Account as accurate and therefore, the inaccurate and derogatory MCM Account remained on Plaintiff's credit report.   Upon review of her updated Equifax credit report, Plaintiff also discovered that Defendant Capital One had again viewed Plaintiff's Equifax credit report on July 29, 2022.  Defendant Capital One had no permissible purpose for accessing Plaintiff's credit file on this date as it had already sold the disputed Account to Defendant MCM.

43.    On August 31, 2022, Plaintiff, with the help of attorney William Geddings who was

12

representing Plaintiff for purposes of filing the complaint only, filed a complaint with the South Carolina Department of Consumer Affairs ("SC DCA") against Defendants Capital One and MCM.

44.    On or about September 15, 2022, Plaintiff sent a second dispute to Equifax. In this letter, Plaintiff again informed Equifax that the MCM Account was from a Capital One Account which belonged to her deceased husband. Plaintiff specifically disputed all liability on the Account and stated it was not her Account. Equifax received this letter on September 23, 2022, and thereafter, forwarded a copy of same to Defendant MCM.

45.    On or about September 15, 2022, Plaintiff sent a second dispute letter to Experian. In this letter, Plaintiff informed Experian that she first learned that MCM was reporting a collection Account on her credit in July, 2022. At that time, her credit score with Experian dropped from 806 to 748. Plaintiff informed Experian that the MCM Account was from a Capital One Account which belonged to her deceased husband and that she had never agreed to be liable for the Account. Plaintiff specifically disputed all liability on the Account and stated it was not her Account. Experian received this letter on September 20, 2022, and thereafter, forwarded a copy of same to Defendant MCM.

46.    On or about September 15, 2022, Plaintiff sent a third dispute letter to TransUnion. In this letter, Plaintiff informed TransUnion that she first learned that MCM was reporting a collection Account on her credit in July, 2022. At that time, her credit

score with TransUnion dropped to 746.  Plaintiff also informed TransUnion that she had disputed this very Account with them in August, but never received a response. In this letter, Plaintiff stated that she again disputed the MCM Account as it was originally a Capital One Account which belonged to her deceased husband and that she had never agreed to be liable for the Account.  Plaintiff specifically disputed all liability on the Account and stated it was not her Account.  TransUnion received this letter on September 20, 2022, and thereafter, forwarded a copy of same to Defendant MCM.

47.    On or about September 23, 2022, Defendant MCM sent a collection letter to Plaintiff.

48.    On September 29, 2022, Plaintiff received the dispute results from Experian wherein Experian informed her that Defendant MCM had verified the Account as accurate. As a result, the inaccurate and derogatory MCM collection account remained on Plaintiff's credit file.  Plaintiff's September 29, 2022, Experian credit report also showed that Defendant Capital One had accessed her Experian credit report on November 12, 2021, and September 13, 2022.  Defendant Capital One had no permissible purpose for accessing Plaintiff's credit file on September 13, 2022, as it had already sold the disputed Account to Defendant MCM.  Defendant MCM had also accessed Plaintiff's Experian credit file on September 9, 2022.

49.    On or about September 29, 2022, Plaintiff received TransUnion's investigation results and an updated credit score which had dropped even lower to 740.  In these investigation results, TransUnion informed Plaintiff that Defendant MCM had

verified the Account as accurate and updated the Account.  As a result, the inaccurate and derogatory MCM collection account remained on Plaintiff's TransUnion credit report.  Plaintiff's September 29, 2022, TransUnion credit report also showed that Defendant Capital One had accessed her TransUnion credit report on December 4, 2021, and September 9, 2022.  Defendant Capital One had no permissible purpose for accessing Plaintiff's credit file on these dates as it had already sold the disputed Account to Defendant MCM.  Defendant MCM accessed Plaintiff's TransUnion's credit file on November 9, 2021, November 16, 2021, December 3, 3021, March 13, 2022, and May 27, 2022.

50.    On or about October 1, 2022, Plaintiff received a letter from Equifax informing her that the disputed MCM Account had been verified as accurate by Defendant MCM and, therefore, the inaccurate and derogatory MCM collection account continued to be reported on her Equifax credit report.  Plaintiff's October 1, 2022, Equifax credit report, which was also included with the letter, confirmed that the MCM collection account remained.  This credit report also showed that Defendant Capital One had again viewed Plaintiff's Equifax credit report on August 30, 2022.  Defendant Capital One had no permissible purpose for accessing Plaintiff's credit file on this date as it had already sold the disputed Account to Defendant MCM.

51.    On or about October 26, 2022, Plaintiff sent a third dispute letter to Equifax.  In this letter Plaintiff again requested copies of any and all documents Equifax received and/or reviewed to verify that the disputed Account belonged to her.  Plaintiff also

reiterated that the MCM Account is from a Capital One Account that belonged to Plaintiff's deceased husband. Plaintiff specifically stated that the MCM Account is not her Account and that she needed the Account to be deleted immediately as she was applying for assisted living facilities and was afraid this derogatory Account would impact her ability to get approved. Equifax received this letter on November 4, 2022 and forwarded same to Defendant MCM.

52.     On or about October 26, 2022, Plaintiff sent a third dispute letter to Experian. In this letter Plaintiff again informed Experian that the MCM Account was not her Account. Plaintiff reiterated that the MCM Account was from a Capital One Account that belonged to Plaintiff's deceased husband and that she had never agreed to be added to or liable for the Account. Plaintiff informed Experian that she had repeatedly requested proof from Defendants Capital One and MCM that she agreed to be on the Account, and they had never provided same. Finally, Plaintiff informed Experian that the Account needed to be deleted immediately as she was applying for assisted living facilities and was afraid this derogatory Account would impact her ability to get approved. Experian received this letter on October 31, 2022 and forwarded same to Defendant MCM.

53.     On or about October 26, 2022, Plaintiff sent a fourth dispute letter to TransUnion. In this letter Plaintiff again informed TransUnion that the MCM Account was not her Account, that her credit score with TransUnion had dropped even lower to 740, and that she needed this matter fixed immediately. Plaintiff reiterated that the MCM

16

Account was from a Capital One Account that belonged to Plaintiff's deceased husband and that she had never agreed to be added to or liable for the Account. Plaintiff informed TransUnion that the Capital One Account was not reporting on her credit, so she didn't understand why this Account remained. Finally, Plaintiff disputed all of the credit inquiries by Defendant MCM as they had no reason to be continually looking at her credit when the Account was not hers. TransUnion received this letter on October 31, 2022 and forwarded same to Defendant MCM.

54.    On or about November 16, 2022, Plaintiff received a letter from Equifax informing her that Defendant MCM had again verified the collection Account as reporting accurately. Accordingly, the inaccurate and derogatory MCM Account remained on Plaintiff's Equifax credit file. This credit report also showed that Defendant Capital One had again viewed Plaintiff's Equifax credit report on September 27, 2022. Defendant Capital One had no permissible purpose for accessing Plaintiff's credit file on this date as it had already sold the disputed Account to Defendant MCM.

55.    On or about November 2, 2022, Defendant Capital One sent a letter to William Geddings, who had filed the SCDCA complaint on behalf of Plaintiff, stating that a copy of the signed application was no longer available. However, Defendant stated that it had confirmed the Account belonged to Plaintiff because the address used to open the Account was linked to Plaintiff, the Social Security number and date of birth on record have been verified by "public records" as belonging to Plaintiff,

payments were received from an Account with Bank of America under Plaintiff's personal information, and Plaintiff called Defendant Capital One on March 23, 2020, stating she wanted to be removed from the Account.

56. Reporting a debt to a credit reporting agency (CRA) is an attempt to collect the debt alleged therein. *See, e.g., Edeh v. Midland Credit Management, Inc.*, 748 F. Supp. 2d 1030 (D. Minn. 2010) ("The court has learned, through its work on countless FDCPA cases, that threatening to report and reporting debts to CRAs is one of the most commonly-used arrows in the debt collector's quiver."); *see also Smith v. Encore Capital Group, Inc.,* 966 F. Supp. 2d 817 (E.D. Wis. 2013).

57. Credit reporting is recognized as a powerful tool used to extract payment from consumer debtors. *Purnell v. Arrow Fin. Servs., LLC,* 303 Fed. Appx. 297, 304, n.5 (6th Cir. 2008); *see also Malone v. Cavalry Portfolio Servs., LLC,* 2015 U.S. Dist. LEXIS 158310, 2015 WL 7571881 (W.D. Ky. Nov. 24, 2015); *Quale v. Unifund CCR Partners,* 682 F.Supp.2d 1274 (S.D. Ala. 2010); *Sullivan v. Equifax, Inc.,* 2002 U.S. Dist. LEXIS 7884, 2002 WL 799856 (E.D. PA. Apr. 19, 2002).

58. The FDCPA provides consumers with "statutorily-created rights to be free from 'being subjected to false, deceptive, unfair, or unconscionable means to collect a debt.'" *McCamis v. Servis One, Inc.,* No. 8:16-CV-1130-T-30AEP, 2016 U.S. Dist. LEXIS 99492 (M.D. Fla. July 29, 2016); see also *Church v. Accretive Health, Inc.,* 654 Fed. Appx. 990, 2016 U.S. App. LEXIS 12414, 2016 WL 3611543 (11th Cir. 2016).

59. An injury-in-fact sufficient to satisfy Article III standing requirements "may exist solely by virtue of statutes creating legal rights, the invasion of which creates standing." *Church*, at 993, quoting *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 373, 102 S.Ct. 1114, 71 L.Ed.2d 214 (1982).

60. Defendants have subjected Plaintiff to false, deceptive, unfair, and unconscionable means to collect a debt.

61. Defendants' acts and omissions caused particularized harm to Plaintiff in that Defendants were seeking to collect a debt that Plaintiff does not owe and Defendants have made false statements to third parties in connection with their attempts to collect this debt that have harmed Plaintiff's reputation and her credit worthiness. Additionally, Defendants' actions have worried the Plaintiff unceasingly, caused her to fear for her future of being able to move into an assisted living facility which she desperately needs, caused her to lose sleep, suffer anxiety, worry, frustration, and physical sickness.

## <u>COUNT ONE</u>
### Violation of the Truth In Lending Act - Capital One

62. Plaintiff hereby adopts, to the extent same are consistent with the allegations contained herein, the averments and allegations of paragraphs 12 through 61 hereinbefore as if fully set forth herein.

63. The Account described herein is an accepted credit card as that term is defined by 15 U.S.C. §1602(m).

64. The transactions and purchases described herein which were attributed to Plaintiff

were the result of unauthorized use of the Plaintiff's name and personal information to add Plaintiff as a joint account holder to the credit card that is the subject of this action as that term is defined by 15 U.S.C. §1602(p).

65.    Plaintiff disputed all of the charges made on the Account and subsequently charged to her, both in writing and by way of telephone conversation, with Defendant Capital One.  Said written dispute specifically set forth that Plaintiff never applied for the Account, never agreed to be added to the Account, did not make any of the charges Defendant was attempting to collect, and did not benefit from any of the purchases made on the Account.

66.    The unauthorized charges described herein exceeded $50.00 and occurred after Plaintiff notified Defendant that she had never opened the Account, never agreed to be added to the Account as a joint account holder, and that Plaintiff disputed liability for each and every charge which was ultimately charged to her.

67.    On November 2, 2022, after Defendant Capital One conducted an alleged review of Plaintiff's fraud claim, Defendant asserted that Plaintiff was legally responsible for all of the charges made on the Account.  Defendant made this determination in spite of the fact that Defendant knew that it had nothing in writing to confirm that Plaintiff ever agreed to be liable for the Account.

68.    It is Defendant's burden to show that the use of the Account in Plaintiff's name was authorized.  15 U.S.C. §1643(b).

69.    Defendant has failed to allege any facts or circumstances that support its assertion

that Plaintiff knowingly and voluntarily agreed to be legally responsible for the charges on the Account. Instead, Defendant simply removed Plaintiff's deceased husband's name from the Account and attributed all of the charges solely to Plaintiff.

70. The Truth In Lending Act makes clear that Plaintiff is not responsible for any charges for the unauthorized use of a credit card in excess of $50.00.

71. Defendant violated 15 U.S.C. §1643 when it attributed the entire balance of the Account to Plaintiff and failed to provide any information supporting its decision to do so.

72. Plaintiff and the attorney handling her deceased husband's estate both called Defendant Capital One to provide all of the necessary estate information so that Defendant could file a claim, but Defendant failed to do so. Instead, Defendant Capital One began demanding payment on the disputed charges and Account from Plaintiff causing Plaintiff to suffer excessive interest charges, late fees, and an ever-increasing past due amount. Thereafter, Defendant Capital One sold the Account to Defendant MCM which immediately began collection activities and reported the collection account to Plaintiff's credit reports.

73. Defendant Capital One's conduct in violating the above provisions of TILA has also caused Plaintiff to suffer actual damages in the form of mental anguish and suffering, physical sickness, anxiety, worry, embarrassment, loss of sleep, frustration, and extreme emotional distress, for which Plaintiff seeks damages. Plaintiff also seeks twice the amount of the inaccurate finance charges suffered by her and all attorneys'

fees and costs as set forth by 15 U.S.C. §1640.

## COUNT TWO
### Violation of the South Carolina Unfair Trade Practices Act - Capital One

74.   Plaintiff hereby adopts, to the extent same are consistent with the allegations contained herein, the averments and allegations of paragraphs 12 through 73 hereinbefore as if fully set forth herein.

75.   Defendant Capital One's conduct amounts to unfair methods of competition and unfair deceptive acts or practices in the conduct of trade or commerce as defined by South Carolina Code §39-5-10, *et. seq.* (As amended). Plaintiff is informed and believes that Defendant knowingly, willfully, unfairly, deceptively, and negligently engaged in unfair and deceptive practices, as described herein.

76.   Specifically, Defendant Capital One either allowed Plaintiff's name to be added to the Account without Plaintiff's knowledge or permission, or willfully transferred the Account to Plaintiff's name after Defendant learned the only legal Account holder had died.

77.   Defendant Capital One refused to properly investigate Plaintiff's dispute that the Account balance was fraudulently and/or wrongfully attributed to Plaintiff, in spite of having full knowledge that the original application was no longer available.

78.   Defendant Capital One threatened and intimidated Plaintiff into paying $10,000 just prior to her husband's death by telling her that she was responsible for the Account and that Defendant Capital One would come after her to collect the entire balance.

79.   Plaintiff further alleges that the actions of Defendant Capital One have a real and

substantial potential for repetition and are a threat to the public interest. Defendant is a nationally known credit card issuer with millions of open-ended credit Accounts throughout the state of South Carolina and the United States. Upon information and belief, it is Defendant's policy to transfer liability for an account to the spouse after the cardholder has died so as to increase revenue and escape having to file a claim for the balance on the account in the probate court.

80. The Plaintiff has suffered an ascertainable loss of at least $10,000.00 due to the unlawful actions of Defendant Capital One and is entitled, under §39-5-140, to recover actual damages in an amount to be proven at trial, treble said actual damages for Defendant's knowing and willful behavior, and an award of reasonable attorney's fees and costs.

81. Defendant Capital One's use or employment of unfair or deceptive methods, acts, and practices caused Plaintiff to suffer extreme worry, humiliation, fear, loss of sleep, anxiety, nervousness, physical sickness, physical pain and mental anguish. Additionally, Plaintiff suffered out-of-pocket losses and attorneys' fees and costs. Defendant's use or employment of unfair or deceptive methods, acts, and practices was willful, wanton, and knowing. Therefore, Plaintiff is informed and believes that she is entitled to an award of three (3) times the actual damages sustained. Plaintiff is also entitled to her attorneys' fees and costs.

## COUNT THREE
### Violation of the Fair Credit Reporting Act-MCM

82. Plaintiff hereby adopts, to the extent same are consistent with the allegations

contained herein, the averments and allegations of paragraphs 12 through 81 hereinbefore as if fully set forth herein.

83. Defendant MCM negligently violated 15 U.S.C. §1681s-2(b)(1)(A) by failing to conduct an investigation after receiving notice that the Plaintiff disputed the information said Defendant had provided to a consumer reporting agency.

84. Defendant MCM negligently violated 15 U.S.C. §1681s-2(b)(1)(B) by failing to review all relevant information provided by the consumer reporting agency pursuant to §1681i.

85. Defendant negligently violated 15 U.S.C. §1681s-2(b)(1)(C) by reporting inaccurate, incomplete, false, and misleading results of the alleged investigation, if any, to the consumer reporting agencies.

86. Defendant negligently violated 15 U.S.C. §1681s-2(b)(1)(D) by failing to notify all consumer reporting agencies that the reporting of the Defendant's Account was inaccurate, incomplete, false, and misleading.

87. Defendant negligently violated 15 U.S.C. §1681s-2(b)(1)(E) by failing to delete the information or permanently block the reporting of the disputed information when the information disputed by Plaintiff could not be verified after Defendant's alleged reinvestigation.

88. As a result of the Defendant's violations set forth above, the Plaintiff suffered harm to her reputation and credit reputation, had a substantial drop in her credit scores, and suffered lost time and enjoyment of life, anxiety, fear, loss of sleep, anger, fright,

physical pain and sickness and mental anguish, as well as damages for attorneys' fees, costs, certified mail expenses, and other out of pocket losses.

## COUNT FOUR
### Violation of the Fair Credit Reporting Act-MCM

89.  Plaintiff hereby adopts, to the extent same are consistent with the allegations contained herein, the averments and allegations of paragraphs 12 through 88 hereinbefore as if fully set forth herein.

90.  Defendant MCM willfully violated 15 U.S.C. §1681s-2(b)(1)(A) by failing to conduct an investigation after receiving notice that the Plaintiff disputed the information said Defendant had provided to a consumer reporting agency.

91.  Defendant MCM willfully violated 15 U.S.C. §1681s-2(b)(1)(B) by failing to review all relevant information provided by the consumer reporting agency pursuant to §1681i.

92.  Defendant willfully violated 15 U.S.C. §1681s-2(b)(1)(C) by reporting inaccurate, incomplete, false, and misleading results of the investigation, if any, to the consumer reporting agency.

93.  Defendant willfully violated 15 U.S.C. §1681s-2(b)(1)(D) by failing to notify all consumer reporting agencies that the reporting of the Account the subject of this action was inaccurate, incomplete, false, and misleading.

94.  Defendant willfully violated 15 U.S.C. §1681s-2(b)(1)(E) by failing to delete the information or permanently block the reporting of the disputed information when the information disputed by Plaintiff could not be verified after Defendant's alleged

reinvestigation.

95. As a result of the Defendant's violations set forth above, the Plaintiff suffered harm to her reputation and credit reputation, had a substantial drop in her credit scores, and suffered lost time and enjoyment of life, anxiety, fear, loss of sleep, anger, fright, physical pain and sickness and mental anguish, as well as damages for attorneys' fees, costs, certified mail expenses, and other out of pocket losses.

## COUNT FIVE
### Violation of the Fair Credit Reporting Act- Capital One

96. Plaintiff hereby adopts, to the extent same are consistent with the allegations contained herein, the averments and allegations of paragraphs 12 through 95 hereinbefore as if fully set forth herein.

97. Equifax, Experian and TransUnion, the entities from which Defendant Capital One obtained, or used information from, Plaintiff's credit reports, are consumer reporting agencies within the meaning of the Fair Credit Reporting Act.

98. The credit reports that Defendant Capital One obtained and/or used from Equifax, Experian and TransUnion relating to Plaintiff were "consumer reports" within the meaning of the Fair Credit Reporting Act.

99. Under 15 U.S.C. §1681b(f), Defendant Capital One was prohibited from using or obtaining Plaintiff's credit report unless Defendant had a permissible purpose for using or obtaining said report.

100. Defendant Capital One's use of or obtaining of Plaintiff's credit reports when Plaintiff did not initiate same by way of applying for credit was a violation of 15

U.S.C. §1681b(f) as Plaintiff did not authorize Defendant to retrieve her credit report nor was a firm offer of credit made to Plaintiff.

101.  Defendant Capital One had no permissible purpose in using or obtaining Plaintiff's credit report.  Specifically, Capital One had no legitimate business need for the information contained on Plaintiff's consumer report as its access was not in connection with a business transaction that was initiated by the Plaintiff.  Likewise, Defendant had no legitimate business need for the information contained on Plaintiff's consumer report to review an account to determine whether the consumer continued to meet the terms of the Account as Defendant Capital One had already sold the Account to Defendant MCM.

102.  In connection with its practice of obtaining credit reports without a permissible purpose, and specific to its having obtained Plaintiff's credit reports without a permissible purpose, Defendant Capital One acted negligently and/or willfully.

103.  In connection with its practice, Defendant certified to Equifax, Experian and TransUnion that it was requesting Plaintiff's credit report in order to review the Account when, in actuality, Defendant Capital One knew that Plaintiff disputed all liability on the Account and that Defendant Capital One had already sold the Account to Defendant MCM.  Accordingly, Defendant obtained credit reports through false pretenses within the meaning of 15 U.S.C. §1681n(b).

104.  As a result of Defendant's negligent and/or willful practices of violating the Fair Credit Reporting Act, Defendant Capital One has caused Plaintiff to suffer damage

to her credit reputation and credit score, worry, humiliation, fear, loss of sleep, anxiety, nervousness, physical sickness, physical pain and mental anguish for which Plaintiff seeks actual damages.  Furthermore, Defendant Capital One is liable under 15 U.S.C. §1681n for punitive damages in an amount sufficient to deter Defendant Capital One from engaging in this kind of illegal practice in the future.

105.    As a result of Defendant Capital One's negligent and/or willful practice of violating the Fair Credit Reporting Act, Defendant is liable under 15 U.S.C. §1681o and/or §1681n for the costs of bringing this action, as well as reasonable attorneys' fees.

## COUNT SIX
### Violation of the Fair Debt Collection Practices Act – MCM

106.    Plaintiff hereby adopts, to the extent same are consistent with the allegations contained herein, the averments and allegations of paragraphs 12 through 105 hereinbefore as if fully set forth herein.

107.    Defendant MCM is engaged in the business of collecting consumer debts from consumers and is a "debt collector," as defined by the FDCPA 15 U.S.C. § 1692a(6).

108.    Defendant MCM made false representations regarding the character, amount, or legal status of the debt in violation §1692e by making false and misleading representations to Plaintiff.  At the time Defendant MCM made these representations to Plaintiff, Defendant MCM knew, or should have known, that said representations were false.  Said representations made by Defendant MCM were made recklessly, willfully, and/or intentionally.

109.    Defendant MCM violated 15 U.S.C. §1692e(2)(A) by falsely representing the

28

character, amount, and/or legal status of an alleged debt.

110.   Defendant MCM violated 15 U.S.C. §1692e(8) by communicating information to the credit reporting agencies which it knew, or should have known, to be false.

111.   Defendant MCM violated 15 U.S.C. §1692e(10) by using false representations and/or deceptive means to collect an alleged debt.

112.   Defendant MCM violated §1692f by using unfair and/or unconscionable means to attempt to collect a debt.

113.   Due to Defendant MCM's violations of the FDCPA, Plaintiff has suffered damages, including loss of her personal time, harm to her credit score, damage to her credit reputation, delayed in applying for a room with assisted living facilities, worry, anxiety, physical sickness, physical pain, stress, headaches, loss of sleep, distress, frustration, embarrassment, and humiliation.  Plaintiff is entitled to actual damages in an amount to be determined by the jury.

114.   Plaintiff also requests attorneys' fees due to Defendant MCM's violations of the FDCPA pursuant to 15 U.S.C. §1692k.

## COUNT SEVEN
### Unconscionable Conduct - §37-5-108- Capital One and MCM

115.   Plaintiff hereby adopts, to the extent same are consistent with the allegations contained herein, the averments and allegations of paragraphs 12 through 114 hereinbefore as if fully set forth herein.

116.   Defendants Capital One and MCM engaged in unconscionable collection activities and practices in violation of the South Carolina Consumer Protection Code with

respect to the Plaintiff's alleged consumer debt.

117.    Defendants violated §37-5-108(5)(a) by using or threatening to use force and/or violence against the Plaintiff if she didn't pay off the Account.

118.    Defendant Capital One violated §37-5-108(5)(b) by communicating with the Plaintiff while her husband was dying and immediately following his death in an effort to collect the full balance due on the Account. The primary purposes of Defendant Capital One's communications were to harass and intimidate the Plaintiff.

119.    Defendant MCM violated §37-5-108(5)(b) by calling the Plaintiff multiple times per day with the purpose of harassing the Plaintiff.

120.    Defendants violated §37-5-108(5)(b)(v) by using language the natural consequence of which was to abuse the Plaintiff.

121.    Defendants violated §37-5-108(5)(b)(vii) by causing the Plaintiff's telephone to ring repeatedly during a twenty-four-hour period with the intent to annoy, abuse, or harass the Plaintiff.

122.    Defendants violated §37-5-108(5)(c) by using fraudulent, deceptive, and/or misleading representations in connection with the collection of a consumer credit transaction by reporting information to the credit reporting agencies that Defendants knew or should have known was disputed and could not be verified as accurate.

123.    Defendants violated §37-5-108(5)(d) by causing or threatening to cause injury to the Plaintiff's reputation by disclosing information affecting the Plaintiff's reputation for creditworthiness with knowledge or reason to know that the

information was false.

124. Upon information and belief, the above violations of the South Carolina Consumer Protection Code by Defendants entitle the Plaintiff to not less than one hundred ($100.00) dollars and not more than one thousand ($1,000.00), for said violations.

125. The Plaintiff claims the above statutory damages for each and every violation, plus actual damages, attorneys' fees and costs.

<u>**COUNT EIGHT**</u>
**Defamation, Libel, Slander - Capital One and MCM**

126. Plaintiff hereby adopts, to the extent same are consistent with the allegations contained herein, the averments and allegations of paragraphs 12 through 125 hereinbefore as if fully set forth herein.

127. Defendants willfully, wantonly, recklessly, and/or maliciously published and communicated false and defamatory statements regarding Plaintiff to third parties and the public at large. Said statements harmed Plaintiff's reputation and credit reputation, caused Plaintiff extreme physical sickness, loss of sleep, fear, worry, mental anguish and emotional distress.

128. Said communications and statements were false in that Plaintiff was not indebted to Defendants and Plaintiff did now owe any balance on the Account that is the subject of this action as her name was either fraudulently added to the Account by her deceased husband or by Defendant Capital One.

129. At the time Defendants made said communications and statements, Defendants knew or should have known the falsity of the communications and statements, or

31

recklessly disregarded the potential inaccuracy of the information, yet knowingly, willfully and maliciously communicated the falsity. The Account was not Plaintiff's and said fact was known to all Defendants as Plaintiff had informed Defendants directly that she was fraudulently added to the Account without her knowledge or permission. Additionally, both Defendants knew that there was no copy of the Account application available to establish that Plaintiff had ever agreed to be responsible for the Account.

130.    The defamatory statements were willfully, recklessly, and maliciously published by Defendants to Plaintiff's creditors and potential creditors, and other third parties. The Account was reported by Defendants to the national credit reporting agencies for dissemination therefrom throughout the country. Indeed, the Account was viewed by multiple entities after said entities reviewed Plaintiff's credit reports.

131.    The defamatory statements referenced Plaintiff. Defendant Capital One sold the disputed Account to Defendant MCM with knowledge that Plaintiff disputed all liability on the Account and that it did not have a copy of the original application on the Account to verify Plaintiff's liability. Thereafter, Defendant MCM reported said defamatory statements to Plaintiff's credit reports. Said false and defamatory statements have harmed the reputation and credit reputation of Plaintiff and/or deterred third persons from associating with her. Specifically, Defendant MCM reported a derogatory Account as belonging to Plaintiff, having a past due balance, and being charged off and/or a collection Account.

132.   As a proximate consequence of Defendants' willful and malicious conduct, false, embarrassing, misleading and negative information concerning Plaintiff was published and disseminated to third parties, including the national credit bureaus, current creditors, and potential credit grantors multiple times.

133.   As a result of Defendants' willful and malicious conduct, Plaintiff was caused to have negative credit reports, to be held up to public ridicule or shame, to suffer injury to her reputation, and suffer economic loss due to the actions of Defendants. Additionally, Plaintiff was caused to suffer embarrassment, humiliation, anxiety, loss of sleep, anger, physical pain and sickness, worry, nervousness, nausea, loss of sleep, and severe mental anguish and emotional stress for which she claims compensatory damages.

134.   Due to the intentional or reckless disregard of Plaintiff's rights as set forth herein, Plaintiff is entitled to and seeks punitive damages against Defendants for their libelous conduct.

## COUNT NINE
### Invasion of Privacy- Capital One and MCM

135.   Plaintiff hereby adopts, to the extent same are consistent with the allegations contained herein, the averments and allegations of paragraphs 12 through 134 hereinbefore as if fully set forth herein.

136.   South Carolina state law recognizes the Plaintiff's right to be left alone and to be free from invasions of privacy in such a manner as to outrage or cause serious mental suffering, shame, and humiliation to Plaintiff.

137. Defendants intentionally intruded upon the Plaintiff's right to privacy by continually harassing the Plaintiff with telephone calls to collect the Account which Defendants knew was not the Plaintiff's debt.

138. The telephone calls made by Defendants to Plaintiff were so threatening and persistent that they were outrageous and caused Plaintiff serious physical sickness, mental suffering and invaded the Plaintiff's privacy.

139. The actions of Defendants were malicious, intentional, and repeated with such frequency that they were outrageous, caused Plaintiff serious physical sickness, mental suffering and invaded the Plaintiff's privacy.

140. The conduct of the Defendants in engaging in the systematic campaign of harassment by repeatedly telephoning the Plaintiff to collect a debt Defendants knew Plaintiff disputed demonstrates Defendants' blatant and shocking disregard for Plaintiff's rights and resulted in multiple invasions of privacy in such a way as would be considered highly offensive to a reasonable person.

141. As a result of the intrusions and invasions into Plaintiff's privacy, the Plaintiff is entitled to compensatory damages in an amount to be determined by a struck jury.

142. Additionally, as all of the acts undertaken and performed by the Defendants and their employees and/or agents were committed with malice, intent, wantonness, and recklessness, the Plaintiff is also entitled to an award of punitive damages in an amount to be determined by a struck jury.

## COUNT TEN
### Negligent Training and Supervision - Capital One and MCM

143.  Plaintiff hereby adopts, to the extent same are consistent with the allegations contained herein, the averments and allegations of paragraphs 12 through 142 hereinbefore as if fully set forth herein.

144.  Defendants knew or should have known of the conduct set forth herein which was directed at and visited upon Plaintiff.

145.  Defendants knew or should have known that said conduct was improper and in violation of multiple Federal and State laws.

146.  Defendants negligently failed to train and supervise its agents and employees in order to prevent said improper and unconscionable conduct.

147.  Defendants negligently failed to train and supervise their agents and employees on the Federal and State laws asserted herein.

148.  As a result of Defendants' negligence, Plaintiff suffered pecuniary losses, incurred attorneys' fees, suffered severe physical pain, mental anguish, physical sickness and suffering, embarrassment and humiliation.

## COUNT ELEVEN
### Reckless and Wanton Training and Supervision - Capital One and MCM

149.  Plaintiff hereby adopts, to the extent same are consistent with the allegations contained herein, the averments and allegations of paragraphs 12 through 148 hereinbefore as if fully set forth herein.

150.  Defendants knew or should have known of the conduct set forth herein which was

directed at and visited upon Plaintiff.

151.    Defendants knew or should have known that said conduct was improper and in violation of multiple Federal and State laws.

152.    Defendants recklessly and wantonly failed to train and supervise their agents and employees in order to prevent said improper and unconscionable conduct.

153.    Defendants recklessly and wantonly failed to train and supervise their agents and employees on the Federal and State laws asserted herein.

153.    As a result of Defendants' reckless and wanton conduct, Plaintiff suffered pecuniary losses, incurred attorneys' fees, suffered severe physical pain, mental anguish, physical sickness and suffering, embarrassment and humiliation.

## AMOUNT OF DAMAGES DEMANDED

WHEREFORE, PREMISES CONSIDERED, Plaintiff demands a judgment against the Defendants for the following:

A.    Actual and statutory damages due to Defendant Capital One's violations of TILA, 15 U.S.C. §1643;

B.    Reimbursement of double the improper finance charges charged to Plaintiff pursuant to 15 U.S.C. §1640;

C.    Attorneys' fees and costs due to Defendant Capital One's violations of 15 U.S.C. §1643;

D.    Actual and statutory damages from Defendants pursuant to 15 U.S.C. §1681n(a)(1)(A) and/or 15 U.S.C. §1681o(a)(1);

36

E.    Punitive damages from Defendants pursuant to 15 U.S.C. §1681n(a)(2);

F.    Costs and reasonable attorneys; fees from Defendants pursuant to 15 U.S.C. §1681n(a)(3) and/or 15 U.S.C. §1681o(a)(2);

G.    For relief in amounts or other appropriate relief as may be determined by the Court pursuant to 15 U.S.C. §1692 to include Plaintiff's actual damages, statutory damages of one thousand dollars ($1,000.00) from Defendant MCM for its violations of the FDCPA, as well as attorneys' fees and costs.

H.    For actual damages, trebled due to Defendant Capital One's willfulness, as well as attorneys' fees and costs pursuant to S.C. Code Ann. §39-5-140, for Defendant's violations of the South Carolina Unfair Trade Practices Act;

I.    For relief in amounts or other appropriate relief as may be determined by the Court pursuant to South Carolina Consumer Protection Code §37-5-108 to include the Plaintiffs' actual damages, statutory damages of one thousand dollars ($1,000.00) for each violation, as well as attorney's fees and costs against Defendants;

J.    For actual, compensatory and punitive damages for Defendants' violation of South Carolina common law as set forth herein;

K.    For this matter to be heard by a jury; and

L.    For such other and further relief as this Court deems necessary and proper.

/s/ *Penny Hays Cauley*
Penny Hays Cauley, Fed. ID #10323

/s/ *William K. Geddings*
William K. Geddings, Fed. ID No. 12584

37

**HAYS CAULEY, P.C.**
1303 W. Evans Street
Florence, SC 29501
(843) 665-1717
(843) 665-1718 Facsimile
phc917@hayscauley.com
will@hayscauley.com

**PLAINTIFF DEMANDS A TRIAL BY STRUCK JURY ON ALL COUNTS**


/s/ *Penny Hays Cauley*
Penny Hays Cauley

**DEFENDANTS TO BE SERVED VIA CERTIFIED MAIL:**
Capital One Bank USA, N.A.
c/o Corporation Service Company – Registered Agent
11 South 12th Street
Richmond, Virginia 23219

Midland Credit Management
c/o Corporation Service Company – Registered Agent
508 Meeting Street
West Columbia, SC 29169